On the 12th day of March, 1926, the complainant and the defendant Carobine sufficiently executed a written contract whereby that defendant agreed to convey to the complainant twenty-three designated lots in the county of Bergen, in consideration of the payment of $4,000, consisting of $2,500 in cash and a purchase-money mortgage for the sum of $1,500. At the time fixed in the contract for the passing of title the parties thereto, by mutual consent, continued that transaction to April 30th, 1926, at which time the complainant was ready, willing and able to perform his part of the contract, but the said defendant defaulted. On May 7th the complainant notified the vendee in writing that he demanded a compliance with the agreement, and fixed the 10th day of May, 1926, at his office, as the time and place for the carrying out of the contract. Again, this defendant failed to comply, and on June 28th following this bill was filed.
The negotiations leading up to the execution of the contract of March 12th were carried on in one single session between the parties thereto, during the course of which the complainant learned of a subsisting mortgage of $15,000, affecting a large number of lots, of which those designated in the above contract were a portion. He thereupon communicated by means of the telephone with one Robinson, the active manager of a corporation known as the Fruit and Produce Acceptance Corporation (one of the defendants herein), the mortgagee holding the above-mentioned lien on the property to be conveyed. After some conversation, it was finally agreed that the corporation just named would execute releases on any lot or lots which the complainant might desire to sell, in consideration of the payment of $100 for each *Page 495 
lot so released. This agreement was not reduced to writing or mentioned in the contract, which is the basis of this suit.
Between the execution of the contract and the time set for the passing of title the complainant's search disclosed that a judgment had been entered under a writ of attachment issued out of the Bergen county circuit court, for the sum of $3,428.64, which was a lien upon the entire tract owned by Carobine. The complainant, of course, demanded that the vendee satisfy or remove this lien upon that part of the land to be conveyed. This, Carobine was entirely unable to do; in fact, his financial condition was such that he was driven to apply to a man named Verro for assistance to prevent, he says, the loss of any equity he might have in the remaining eighty-four lots of land besides the twenty-three mentioned in the contract with the complainant. Thereupon, the judgment was paid by a corporation known as the Alps Realty Company, and an assignment of it was taken in the name of one of the officers thereof, another defendant named Starace. This artifice was adopted to prevent any future question of a merger.
The judgment in the attachment proceeding has been assigned to the defendant Starace, who is the present holder of it. There is nothing from which I can gather the impression that the assignment whereby he took was tainted with fraud, or any attempt to hinder, embarrass or delay the complainant, and this is borne out by his position upon the final hearing. He then and there offered and agreed in open court to release from the lien of his judgment those lots of land which the complainant now seeks to have conveyed to him upon the payment by the complainant of a sum of money that will bear the same proportion to the amount of the judgment that the value of the complainant's lots bears to the value of the entire tract of which they are a part. This I consider to be eminently fair. The complainant wishes the release to be upon the condition that he pays Starace a sum of money that will bear the same proportion to the amount of the whole judgment as the number of lots (not the value) he demands from Carobine will bear to the entire number of lots of which *Page 496 
Carobine was seized on March 12th, 1926. This is very unfair unless all of the lots are identical in value, which, of course, is difficult to believe, and the proofs and testimony were very much to the contrary. The complainant's position, alone, would indicate that he hopes to profit by the method he would adopt, and this could only be done at the expense of Starace. The proposal is made by Starace that he and the complainant each nominate an arbitrator, they to name a third, and the vote of any two of them to fix the amount that the complainant shall pay on account of the judgment. I will hear these parties on the question whether that procedure should be adopted, or some other, such as the appointment of a special master by the court or an expert to be named by the court who will be satisfactory to both Starace and the complainant.
A further complicating situation arises out of the fact that the Alps Realty Company has now entered into negotiations with the Fruit and Produce Acceptance Corporation to take an assignment of the latter's mortgage for $15,000 and a second mortgage executed to it by Carobine to secure the sum of $3,000 which the complainant maintains is void for want of consideration. This last contention is not sound. The mortgage came into being in this way: The defendant Carobine, at the time of the execution of the $15,000 mortgage, was under contract to convey a number of lots to a third party who defaulted upon his agreement. It had been arranged between Carobine and the mortgagee that he would turn over to the latter all or some of the consideration he was to receive upon the sale of the lots just mentioned. Consequently, when the prospective purchaser broke his agreement Carobine then delivered the smaller mortgage, in place of the cash consideration he had bound himself to pay, and which he owed to the mortgagee because the mortgage was not extended to the lots under contract to be conveyed, only because the proceeds of that sale were to become the property of the mortgagee.
The negotiations mentioned above, for an assignment of the mortgages held by the Fruit and Produce Acceptance *Page 497 
Corporation to the Alps Realty Company, cause me no concern, because I am convinced that both of these corporations had actual knowledge of the rights of the complainant, and it was frankly confessed that everything which was done was for the benefit of the defendant Carobine, and that his conveyance of his remaining eighty-four lots was to be regarded as a mortgage and not as a conveyance of the fee at all. That is to say, Carobine was to have an equity of redemption which consisted of the repayment to the Alps Realty Company of any expenditures for the protection of Carobine's property.
But a serious situation is presented by the nature of the mortgages held by the Fruit and Produce Acceptance Corporation upon this land. They are of a kind commonly known as demand mortgages, which is to say that the principal sums were to become due and payable immediately upon demand by the mortgagee. It will be recalled that the agreement made by the Fruit and Produce Acceptance Corporation with the complainant was that it would release from the lien of its mortgages any one or more of the twenty-three lots the complainant has contracted to purchase, provided $100 should be paid by him for each lot so released. Now, a simple decree designed to carry this promise into effect would result in the awkward situation that the mortgagee would have no way of determining how long it would have to wait for its money. Neither could provision very well be made for compelling the mortgagor, Carobine, to continue the punctual payments of the installments of interest. But it would appear that complete justice in this respect would be accomplished by making the decree conditional upon the payment by the complainant to the Fruit and Produce Acceptance Corporation of the complete sum of $2,300, which would be $100 for each of the twenty-three lots so to be conveyed, and directing a formal release upon the discharge of this payment. This is a term that might fairly be imposed upon the complainant for the assistance he seeks, and it certainly would not be unjust to the corporation, because that entity has already, under the provision of the mortgages, elected to demand *Page 498 
the whole of the principal sum, and it would thus receive at once and without further litigation the equitable share of the principal of its mortgages secured by the lots in question. Not only has the Fruit and Produce Acceptance Corporation filed its bill to foreclose its mortgages, but one of the objects of the present suit was to restrain the prosecution of the foreclosure suit so that the lands would not escape the jurisdiction of this court by an execution sale.
I can see nothing in the opinion of the court of errors and appeals in Brisbane v. Sullivan, 86 N.J. Eq. 411, or in the opinion of Vice-Chancellor Griffin in the same case, 93 N.J. Eq. 578,
that would interfere with such a decree. In that case, the result of a decree in conformity with the prayer of the bill would have been to compel the performance of a contract "materially variant from the one entered into by the parties."86 N.J. Eq. 413. In addition, it was pointed out that it would have resulted in a serious loss to the defendants if the point on which it turned should ever be differently decided in an action by the defendants against their predecessors in title in a subsequent action where the decision of the Brisbane Case
should not have been considered res judicata, and in other ways much hardship would have been occasioned.
It is also said on behalf of the defendants that there is lack of any proof indicative of the complainant requiring this property for any "special or unusual reason," as was said in the earlier opinion in Brisbane v. Sullivan (at p. 415), and that the complainant should be left to his legal remedy. "The principal [jurisdiction in specific performance] which is material to be considered is, that the court gives specific performance instead of damages only when it can by that means do more perfect and complete justice." Wilson v. Northampton,c., Railway Co., L.R., 9 Ch. 279. Notwithstanding the rationale thus expressed, I think that the equitable discretion should be exercised, in view of the habitual rendering of decrees for specific performance in every case where the contract is for the conveyance of real property, and where "the contract is in writing, is certain *Page 499 
in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party" (Pom. Eq. Jur. § 1404), as is concededly the case with the contract under examination.
While the defendant the Fruit and Produce Acceptance Corporation, in its answer, does not set up the statute of frauds and perjuries by distinctly pleading the act, it does deny that there was any legal agreement to release any of the lots in question, "and this defendant stands upon its legal right to refuse so to do." If this does not amount to what would have been a plea under the former practice it cannot be denied that at least it amounts to a denial of any enforceable contract or agreement having been made. Under these circumstances, this defendant has a complete right to take refuge behind the statute.Lozier v. Hill, 68 N.J. Eq. 300. As I understand the practice with regard to pleading the act it is not necessary either at law or in equity to allege in the complaint or bill that a contract required to be in writing was, in fact, in writing; but, on the other hand, if it be made to appear that it was by parol, that is demurrable. In defensive pleadings, if it be admitted that such a contract was entered into without at the same time setting forth the informality, that bars the defense created by the statute. But if, on the other hand, the making of the contract be denied, then the defense may resort to the enactment, because, in the face of this denial, the actor must prove a legal enforceable contract. Douma v. Powers, 92 N.J. Eq. 25. The last illustration is the one followed by this defendant, and, therefore, it is entitled to resist specific performance.
The fifth section of our statute of frauds and perjuries (2Comp. Stat. p. 2612) provides, among other things, that no action shall be brought "upon any contract for sale of land, tenements or hereditaments, or any interest in or concerning them" unless the agreement be in writing and signed by the party sought to be charged therewith or his lawfully authorized agent. From this it is argued that the court cannot compel performance of the promise to release from the lien of its mortgage made by the Fruit and Produce Acceptance *Page 500 
Corporation. An examination of the decisions in other jurisdictions shows them to be in a state of the wildest confusion. It is declared, in 27 C.J. 218: "It is also held that an oral contract to execute a release is valid; but the weight of authority is to the contrary on this proposition." An examination of the authorities cited to sustain the text is most unsatisfactory, and some of them are in direct conflict with it. For example, Chancellor Kent did not discuss the statute and its application in Stevens v. Cooper, 1 Johns. Ch. 425, but confined his decision to an application of the parol evidence rule. In the case of Malins v. Brown, 4 N.Y. 403, Judge Taylor, who wrote the opinion for the court of appeals, discussed the subject now under consideration and declared the promise not to be within the act; but the case was decided upon an entirely different point. The decision rests upon the fraud arising out of the refusal to perform an oral contract after full performance by the other party thereto. There is a great deal that might be said upon both sides of the question as to whether the promise made by the Fruit and Produce Acceptance Corporation to release by parcels without the same being reduced to writing, is within the act or not. I must confess that my mind is not entirely clear as to which is the better rule. But there is enough in this case to take it out of the mischief that the legislature sought to render impossible by the adoption of the statute; and that is the fact that the promissor frankly admits the making of the promise, so that the proof thereof actually amounts to demonstration, as Vice-Chancellor Fielder pointed out, is necessary in any case where a parol contract is taken out of the operation of the statute. Magnolia Construction Co. v. McQuillan, 94 N.J. Eq. 342.
There is considerable authority to the effect that a promise to release need not be in writing, so far as equity is concerned, when there is borne in mind the difference between the legal and the equitable views. Of course, if the execution of a mortgage were to pass the fee, as it did at the early common law (3 Pom.Eq. Jur. § 1179), it would create an estate in land that could only be efficiently dealt with by a written *Page 501 
instrument. But when it is considered "the mortgage is not a conveyance, nor does it confer upon the mortgagee any estate in
the land. It creates a lien on the land, or, in the apt language already quoted, `a potentiality to follow the land by proper process, and condemn it for payment' of the debt" (3 Pom.Eq. Jur. 1188), a different situation exists. Of course, we are not concerned with the difference, if any, that arises after breach. But whatever the rule should be in a case in which there is a denial of the making of an oral promise to release all or part of mortgaged premises from the lien of a mortgage, it is difficult to perceive why the statute should be a bar to compelling one to carry out an honest agreement into which he has entered with another and which he admits having made. The statute of frauds was designed to protect the innocent from false claims that were made and enforcement of which was secured through perjury.
Unfortunately, it is not practicable to apply the doctrine of equitable estoppel, as was done in Swain v. Seamens, 9 Wall.254, because my understanding is that equitable estoppel is invoked only where a party, relying upon the promise or conduct of another, changes his position for the worse or obligates himself to a third party. In the case at bar, neither of these circumstances occur, because the complainant, if he is robbed of his bargain, loses nothing else, and the vendor will gladly release him from the contract to purchase.
It is true that this case presents more complications than usually appear in a specific performance suit where the discretion of the court is exercised in favor of the complainant. However, I do not understand that this is any reason for refusing to do justice, where none of the legal rights of any of the parties are infringed. For the reasons I have already expressed, I do not think that any of the rules which operate against compliance with the prayer of a bill in a case of this sort, exist herein, and it seems to me that the defendants Carobine and the Fruit and Produce Acceptance Corporation will be compelled to do nothing more than they are equitably bound to do, while the defendant Starace, as already said, will be bound to do nothing more than he has voluntarily agreed to do. *Page 502 
I will advise a decree directing the conveyance of the fee by Carobine to the complainant in accordance with the contract of March 12th, 1926, upon compliance by the latter of the obligations upon his part to be performed, and directing the defendant the Fruit and Produce Acceptance Corporation to execute a release at the request of the complainant of all of the lots of land to be conveyed, upon receipt of $2,300, and enjoining the last-mentioned defendant from causing any sales to be held of any of the lots to be conveyed by Carobine under any decree or execution in the suit wherein it seeks to foreclose the right of redemption of Carobine in his lands described in the mortgage held by the Fruit and Produce Acceptance Corporation. The decree will also provide for the liquidation of Starace's judgment, in accordance with the views hereinabove expressed, with regard thereto. The acceptance of those views by the complainant would, of course, be a sine qua non to the making of the decree, as otherwise the contract will be unenforceable.