278 A.2d 405.

PEACOCK REALTY COMPANY *vs.* E. THOMAS CRANDALL FARM, INC.

JUNE 4, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. In this civil action the plaintiff seeks to recover from the defendant the balance due under an alleged

agreement wherein defendant agreed to pay a real estate broker's commission for procuring a purchaser for its real estate. The defendant pleaded in bar that the absence of a sufficient writing evidencing the alleged agreement constituted a defense under the statute of frauds. It also counterclaimed for the $3,000 deposit paid to the plaintiff as the defendant's agent by the purchaser upon execution of the sales agreement. The case was tried to a Superior Court justice sitting without a jury who found for the plaintiff on its claim and against the defendant on its counterclaim. After entry of judgment the defendant appealed.

The essential facts are not in substantial dispute. Ralph P. Peacock is the president, treasurer and the sole stockholder of the plaintiff corporation. It is engaged in the business of selling real estate and concentrates primarily on the sale of farms and undeveloped acreage. At all times material hereto defendant owned a tract of farmland in the town of Johnston containing by estimate about 43 acres and E. Thomas Crandall was its president and treasurer.

On January 31, 1969, Crandall and Peacock, acting on behalf of their respective corporations, orally agreed that plaintiff would act as an agent or broker for the sale of defendant's farmland for a period of 90 days; that the asking price would be $1,500 per acre; and that plaintiff, if it procured a purchaser, would be entitled to a commission of ten per cent of the sale price. Whether or not Peacock requested that their agreement be reduced to writing is in dispute. Crandall says that Peacock did not give him a paper to sign. Peacock, on the other hand, testified that Crandall's response to the suggestion that their understanding be formalized by the execution of an agency agreement was "Here is my hand, Mr. Peacock. My word is my bond."

In due course Peacock procured a prospective purchaser

named DeCesaris, and on February 13, 1969, defendant entered into a written agreement with DeCesaris for the sale of its property. That agreement identified the parties and the premises to be sold, stipulated the selling price, acknowledged the receipt of $3,000 as earnest money, fixed a date for the closing, and provided that at the closing defendant would convey an insurable title and DeCesaris would pay the balance of the purchase price. The agreement, a copy of which is set out in full in the margin,[1] was signed by both parties and by plaintiff as "Agent."

About two months after the execution and delivery of the agreement, Crandall requested Peacock to "get me [him] off the hook." He was disturbed that his company had unwittingly and unknowingly committed itself to selling more of its land than it had intended, and either he or his attorney, or perhaps both, advised Peacock that no commission would be paid unless defendant was relieved of its obligation to sell. DeCesaris was approached, but he refused to consent to a cancellation of the agreement. He

---

[1]"Peacock Realty Company
1582 Hartford Ave., Johnston, R. I.
Tel. 351-3488

No. 199                                    Date February 13, 1969

Received from Elio DeCesaris or his Nominee $3,000.00
Address 14 Rose View Drive, Cranston, R. I.          Telephone 9440085
        Three Thousand                               Dollars
For Deposit On Property Owned By E. Thomas Crandall Farm Inc. At 225 Morgan Ave. Johnston, R. I. Plat 24 Lot 26 Selling Price $75,250.00. Subject To The Conditions Listed Below: Consisting of 43 acres of land more or less. It is agreed by both Buyer and Seller the selling price shall be $1,750.00 per acre contingent on the acreage being more or less. Seller to convey an insurable title to Buyer on ore [sic] before Sept. 15, 1969 for which the Buyer agrees to pay the balance of the selling price.
        Note This Deposit Will Not Be Returned If Above
        Conditions Are Accepted.
Agent/s/ Peacock Realty Company          Buyer/s/ Elio DeCesaris
    /s/ Ralph P. Peacock     Seller E Thomas Crandall Farm Inc.
Witness to all Signatures     /s/ E Thomas Crandall Treas."

did, however, agree that the land area to be conveyed could be reduced from the "43 acres of land more or less" provided for in the sales agreement to 39.22 acres. This apparently satisfied defendant and the closing took place on October 14, 1969. The defendant executed and delivered a deed of the premises, and the agreed purchase price was paid. The defendant, however, refused to pay plaintiff the agreed commission and this litigation resulted.

The initial question is whether the buy and sell agreement between DeCesaris and defendant and signed by both will suffice as a note or memorandum of defendant's oral agreement to pay plaintiff a commission upon the sale of its real estate. The pertinent legislation is the sixth clause of the statute of frauds G. L. 1956 (1969 Reenactment) §9-1-4 which provides that:

"No action shall be brought:
\* \* \*

"*Sixth.* Whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate.

"Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

The provision is of comparatively recent origin in this state having first been enacted by P. L. 1962, chap. 162, sec. 1. Since then the decisions of this court have recognized that the purpose underlying the sixth clause of the statute is to protect against fraudulent claims for services and it has made it clear that real estate brokers, if they expect to be compensated for their services, must comply strictly with the legislative directives. In hewing closely to that line and in resisting encroachments upon these directives, we have said that an oral engagement of a broker will not support his claim for a commission for procuring a sale of a freehold estate or a lease of realty for a fixed term of

years irrespective of whether the basis or theory of his action is contract, *quantum meruit* for services rendered or estoppel. *Zexter* v. *Cerrone*, 107 R. I. 92, 265 A.2d 328; *Wright* v. *Smith*, 105 R. I. 1, 249 A.2d 56; *Dooley* v. *Lachut*, 103 R. I. 21, 234 A.2d 366; *Heyman* v. *Adeack Realty Co.*, 102 R. I. 105, 228 A.2d 578.

While those are now settled principles, there are other problems relating to broker's commissions which arise under the statute and about which we have not yet spoken. One of these is the threshold question and, as we have already suggested, it concerns when and under what circumstances a memorandum or note reflecting the terms of an oral agreement to pay a real estate broker's commission will be sufficient to meet the requirements of the statute of frauds. Although undecided by us with respect to a broker's commission, that question has been answered with reference to a contract for the sale of land where it is the rule that a sufficient memorandum "need contain only the *substance of the contract or agreement* and not a statement of all particulars." (Emphasis supplied.) *Durepo* v. *May*, 73 R. I. 71, 76, 54 A.2d 15, 18. And a memorandum will satisfy the substance test,

> "* * * if it sets out who are the seller and the buyer, their respective intention to sell and to purchase, such a description of the subject matter of the sale as may be applied to a particular piece of land, the purchase price, and the terms of payment if the sale is not for cash * * *." *Sholovitz* v. *Noorigian*, 42 R. I. 282 at 285-86, 107 A. 94 at 95.

Using the contract for the sale of land requirements as guidelines, defendant argues that the minimum prerequisites for the sufficiency of a note or memorandum of an oral agreement to pay a real estate broker's commission should at least include a description of the premises to be sold and a summary of the terms of the compensation. If those are the standards the note or memorandum here

would be deficient, defendant insists, not only because it fails to specify the rate of compensation, but also because it says nothing whatsoever with regard to whether or not any compensation or commission was to be paid to plaintiff for procuring the sale of the real property.

The position defendant urges is amply supported by the authorities, and the cases, almost without exception, hold that a writing, otherwise satisfying the requirements of the statute, will nonetheless be inadequate if it fails to state the amount of the compensation or the commission to be paid to the agent or broker, *VerMaas* v. *Culbertson, Roe & Bell, Inc.,* 154 Neb. 528, 48 N.W.2d 674; *Carney* v. *McGinnis,* 68 N. Mex. 68, 358 P.2d 694; *Buratti & Montandon* v. *Tennant,* 147 Tex. 536, 218 S.W.2d 842. 2 Corbin, *Contracts* §501, pp. 708-09; Annot., 9 A. L. R.2d 747, 754. The courts in California take a contrary view. There, under a statutory provision similar to ours, the amount of the compensation and the agreement to pay the same may be shown by parol so long as the note or memorandum evidencing the oral engagement discloses that the broker was authorized to act in connection with a definite piece of property. *Davinroy* v. *Thompson,* 169 Cal. App.2d 63, 336 P.2d 1028; *Pacific Southwest Development Corp.* v. *Western Pacific R.R.,* 47 Cal.2d 62, 301 P.2d 825; *Bruner* v. *Van's Markets,* 103 Cal. App.2d 135, 229 P.2d 56; *Moore* v. *Borgfeldt,* 96 Cal. App. 306, 273 P. 1114.

The plaintiff, of course, argues for the California approach and it contends that it is peculiarly appropriate in this case because here the missing element, i.e., the rate of commission, may be readily established by referring to the custom of the trade. In support it refers to *Belilove* v. *Reich,* 102 R. I. 250, 229 A.2d 775. There the writing which provided for the sale of a parcel of real estate failed to state either the type of deed to be delivered or the terms of payment, and it also omitted any mention of what

adjustments would be made relative to rents, taxes, water bills and the like. Notwithstanding these gaps we found that the writing was sufficient as a memorandum to comply with the statute of frauds. Our rationale was that it was reasonable to assume that with respect to those omissions the parties must have intended to adopt the ordinary practices followed when real property was sold under similar circumstances. Arguing by analogy plaintiff says that it is reasonable to infer in this case that the parties must have intended to follow the ordinary practice and custom with respect to the payment of commissions which prevail when farm property is sold. The evidence here is that the practice and custom are for the seller to pay the broker who procures the purchaser a commission of ten per cent of the selling price.

While plaintiff's argument is persuasive, on balance we believe that it is overridden by the policy considerations which lie at the root of the sixth section of the statute and upon which the great weight of authority on this question is predicated. The matter, however, does not rest there for, as Professor Corbin says, what constitutes a sufficient note or memorandum "* * * depends in each case upon the setting in which it is found." 2 Corbin, *Contracts* §498 at 683. On the same subject Williston writes that a court must consider the surrounding circumstances, the pertinent facts and all the evidence in a particular case and if it then concludes "* * * that enforcement of the agreement will not subject defendant to fraudulent claims, the purpose of the Statute will best be served by holding the note or memorandum sufficient even though it be ambiguous or incomplete." 4 Williston, *Contracts* §567A at 20 (Jaeger 3d ed. 1961).

When we look to the setting and the surrounding circumstances in this case we find that Crandall, defendant's president and treasurer, admitted on the witness stand that

he employed plaintiff to procure a buyer for defendant's property; that he agreed to pay as a commission "what he generally gets for selling farmland"; and that he acknowledged that the rate of commission agreed upon was ten per cent of the selling price.[2]

While the majority rule would permit defendant to admit, as Crandall did, its honest obligation and at the same time to defeat its performance by pleading the bar of the statute, Stevens, *Ethics And The Statute Of Frauds,* 37 Cornell L.Q. 355-56, there are authorities which do not completely accept that view. They believe that there are circumstances when admissions of this nature are significant and should not be ignored. Corbin, *supra,* §498 at 683, goes so far as to say that "A complete admission in court by the party to be charged should dispense with the necessity of any writing whatever." His position finds some

---

[2]"Q Did you offer to let Mr. Peacock represent you in the sale of the land?

"A Well, I said if he could sell it, all right.
    "Mr. Cavanagh: Excuse me. May I have the answer?
    "The Witness: I said if he could sell it, okay.

\* \* \*

"Q Did you have any conversation with Mr. Peacock concerning his commission?

"A No. He told me what he generally gets for selling farmland, that's all.

"Q What did you reply to that?

"A 'Okay,' 'All right,' something like that. I can't remember every detail.

"Q Did you sign any documents concerning—
    "The Court: Excuse me. Before we pass over this, what was the amount Mr. Peacock told you he would generally get? What was the amount Mr. Peacock told you he generally would get?

    "The Witness: Ten per cent for farmland and six per cent for real estate, houses."

support in the decisions.[3] Illustrative is *Sealock* v. *Hackley*, 186 Md. 49, 45 A.2d 744. That case involved an oral agreement for the purchase of real estate and in holding it enforceable the court said:

> "* * * the admissions of a party in the form of testimony constitute sufficient 'memoranda' or 'writings' under the Statute of Frauds, for recorded testimony is regarded as equivalent to signed depositions. The purpose of the Statute of Frauds is to protect a party, not from temptation to commit perjury, but from perjured evidence against him. Admissions of a party in testifying, while evidence, in form, are in essence not mere evidence but make evidence against him unnecessary." *Id.* at 52-53, 45 A.2d at 746.

On the same issue the Pennsylvania Supreme Court observed:

> "The statute of frauds, however, does not absolutely invalidate an oral contract relating to land but is intended merely to guard against perjury on the part of one claiming under the alleged agreement. Accordingly, if the title holder admits, either in his pleadings or his testimony, that he did in fact enter into the contract, the purpose of the statute of frauds is served and the oral agreement will be enforced by the court * * *." *Zlotziver* v. *Zlotziver*, 355 Pa. 299 at 302, 49 A.2d 779 at 781.

See also *Hagedorn* v. *Hagedorn*, 194 Iowa 172, 188 N.W. 980; *Degheri* v. *Carobine*, 100 N.J.Eq. 493, 135 A. 518, *rev'd on other grounds*, 102 N.J.Eq. 264, 140 A. 406.

A somewhat less pragmatic view is taken by the Minnesota court which, while agreeing that an admission of a

---

[3]The Uniform Commercial Code (G. L. 1956 (1969 Reenactment) §6A-2-201) provides that an oral contract for the sale of goods for $500 or more will be enforceable
  * * *
  "(b) if the party against whom enforcement is sought admits in his pleading, *testimony or otherwise in court that a contract for sale was made,* but the contract is not enforceable under this provision beyond the quantity of goods admitted * * *." (Emphasis supplied.)

contract will not preclude assertion of the statute of frauds, nonetheless in *Radke* v. *Brenon*, 271 Minn. 35, 134 N.W. 2d 887, said that an admission that a contract was made certainly cannot "be ignored when all the other evidence submitted supports the same conclusion." *Id.* at 41, 134 N.W.2d at 891. Then, after taking into account the surrounding circumstances, the pertinent facts, and all the evidence in the case, it concluded that the written memorandum of the contract to sell land, even though lacking in the formal requirements contemplated by the statute, was nonetheless sufficient. See also *Jones* v. *Jones*, 333 Mo. 478, 63 S.W.2d 146; Stevens, *Ethics And The Statute Of Frauds, supra.*

In this case we need go no further than the court did in *Radke* v. *Brenon, supra.* The deficiencies which defendant finds in the memorandum in this case were clearly remedied by Crandall's testimony, and when he left the witness stand all of the terms essential to the validity of the commission agreement were crystal clear and undisputed. In that context, and notwithstanding our general policy which frowns on anything short of complete compliance with the statute by a real estate broker, to excuse defendant from performance by reason of those deficiencies would be tantamount to permitting it to invoke the statute to sanction rather than to prevent an injustice. This, in our judgment, would be wrong.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

*Joseph V. Cavanagh,* for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Robert W. Lovegreen,* for defendant.