383 A.2d 1042.

ADAMS-RIKER, INC. *vs.* FRANK A. NIGHTINGALE.

MARCH 28, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J.  The defendant appeals from a judgment entered in the Superior Court in favor of the plaintiff in the amount of $3,009.45 plus interest and costs. The judgment represents the plaintiff's share of an insurance commission allegedly due it pursuant to an oral agreement between the plaintiff and the defendant. The defendant contended in a jury-waived trial held in the Superior Court that (1) the plaintiff had abandoned the oral contract and (2) the statute of frauds barred any enforcement of the agreement. The trial justice found to the contrary. Hereinafter we shall refer to the plaintiff as either "Adams-Riker" or "the agency" and to the defendant by his last name.

Adams-Riker is a Rhode Island corporation engaged as a general agent in the business of representing various insurance companies in the sale of all forms of insurance. In August 1973 it hired Nightingale as an agent to solicit insurance and service accounts. Originally, the parties agreed that Nightingale's compensation would consist of $1,000 per month plus 50 percent of all commissions earned on all insurance contracts he secured. In May of 1974 the parties renegotiated Nightingale's remuneration so that he would receive a monthly salary of $600 plus all of the first $5,000 of commissions generated by him during the year and one-half of the commissions that exceeded the $5,000 figure.[1] At no time did the parties reduce their employment agreement to writing. However, both parties, at trial and on appeal, agree that these were, in fact, the terms and conditions of Nightingale's employment.

Sometime in late 1947 Nightingale sold a "Key Man" life insurance policy which realized a commission for the first

---

[1] The parties also agreed that beginning in May 1975 the monthly salary would be automatically increased to $800.

year of the policy that amounted to $24,075. The commission was to be paid in quarterly installments. The policy was written through the American National Insurance Company, a Texas corporation.[2] Since Texas law prohibited American National from doing business with a corporation, the commissions were made payable to Nightingale rather than to Adams-Riker. Nightingale received the first three quarterly commission checks, and he shared the proceeds with his employer in accordance with the May 1974 oral agreement. In each instance Nightingale would endorse the commission check over to the agency, Adams-Riker would deposit the check in its account, and then pay Nightingale his share.

In August of 1975 the relationship between the parties began to deteriorate. Adams-Riker asked Nightingale to sign a form assigning to the agency all the commissions payable to him on life insurance policies written by American National Insurance Company. The agency insisted that the execution of such a stipulation was an implicit part of its employment agreement with Nightingale and necessary in light of the extenuating circumstances of Texas law. Nightingale refused to execute the assignment. On September 8 Nightingale was fired for his "lack of production." The very next day American National's fourth quarterly commission check in the amount of $6,018.90 arrived in Rhode Island, and in due course it was picked up by Nightingale. Nightingale conceded that the fourth-quarter check was earned while he was still in the employ of Adams-Riker. Once Nightingale refused to pay the agency its half share of the check, this litigation began. In its complaint Adams-Riker sought its share of the fourth quarterly commission.

---

[2]Originally, the American National Insurance Company and its Rhode Island agent, Norman LaCroix, were named as defendants in Adams-Riker's complaint. However, at trial the trial justice dismissed the complaint so far as it related to American National and LaCroix. Adams-Riker takes no issue with the dismissal.

Nightingale first contends that Adams-Riker abandoned the oral contract when it dismissed him and, therefore, is precluded from enforcing the contract. Although this issue was raised below, the trial justice did not expressly refer to it in his decision. However, since he found for the agency, we must assume that he had rejected Nightingale's contention as to the abandonment. *Lamb* v. *Feyler*, 68 R.I. 83, 85-86, 26 A.2d 752, 753-54 (1942). The only evidence in the record which supports this defense is the testimony of the agency president, William Adams. On cross-examination he agreed that the employment contract was terminated on September 8, 1975, the date Nightingale was fired. With the exception of 2 months' "severance pay" amounting to approximately $2,200, the agency paid Nightingale nothing after the firing.

While such evidence would be persuasive in proving Adams-Riker had abandoned any rights it had to Nightingale's future employment services, it is insufficient to show that the agency relinquished its rights to commissions that had already accrued under the contract. Whether a party has abandoned a contract depends upon the concurrence of two factors: an intent to abandon, together with some act or omission which warrants the conclusion that the abandoning party no longer claims or retains any interest in the subject matter. *Jakober* v. *E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 110, 265 A.2d 429, 433 (1970). The testimony of all parties, including Nightingale, clearly indicates that Adams-Riker never intended to relinquish its rights to the fourth-quarter commission. Nightingale admitted that on the day he was fired he had a discussion with the principals of Adams-Riker regarding the terms of his severance and he was again asked to assign to the agency his commissions. Nightingale conceded that the agency was insisting that the fourth-quarter commission be split pursuant to the May 1974 agreement. Such testimony confirms Adams-Riker's position that it never intended to abandon its vested rights under the May 1974 employment contract. Therefore, we reject Nightingale's contention that the

agency had abandoned all its rights under the employment contract when it dismissed him.

We turn now to the statute of frauds defense. Specifically, Nightingale, citing G.L. 1956 (1969 Reenactment) §9-1-4, argues that since the contract was not to be performed within the period of 1 year of its making, it is unenforceable in the absence of some writing or memorandum signed by him. The trial justice rejected this defense on the basis of our holding in *Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.*, 108 R.I. 593, 278 A.2d 405 (1971). There we held that a party's in-court testimony admitting terms essential to the validity of the contract may supplement an otherwise incomplete memorandum and provide a basis for enforcing the contract. The rationale for the rule announced in *Peacock Realty* was twofold: first, the admissions of a party in the form of testimony should, for all practical purposes, be considered the equivalent of a "memorandum" signed by him; and second, to rule otherwise would allow a party to subvert the purposes of the rule.

In *Peacock Realty* we noted that an apparent majority of jurisdictions would permit a defendant to admit its honest obligation and at the same time to defeat its performance by pleading the bar of the statute of frauds. 108 R.I. at 600, 278 A.2d at 409; Stevens, *Ethics and the Statute of Frauds*, 37 Cornell L.Q. 355 (1952). A number of jurisdictions, however, follow Professor Corbin's position that a complete admission in court by the party to be charged should dispense with the necessity of any writing whatsoever. 2 Corbin, *Contracts* §498 at 683; *see e.g.*, *Sealock v. Hackley*, 186 Md. 49, 45 A.2d 744 (1946). In *Peacock Realty* we did not expressly adopt the latter view, for the facts of that case were amenable to an intermediate position. Thus, we held that oral admissions may be used to remedy a written memorandum which was otherwise lacking in the formal requirements contemplated by the statute. 108 R.I. at 602, 278 A.2d at 409-10; *Radke v. Brenon*, 271 Minn. 35, 134 N.W.2d 887 (1965). Today we *do* adopt the views expressed

by Professor Corbin, for to limit the *Peacock Realty* holding to situations where there is a deficient or incomplete memorandum would serve no useful purpose where, as here, the party to be charged admits *all* of the terms essential to the validity of the contract.

Nightingale, in both his answer to the complaint and his courtroom testimony, admitted not only the existence but also all of the terms of his oral employment contract. More importantly, he admitted that he was bound to share with the agency all commissions he earned in excess of $5,000. Thus, as in *Peacock Realty*, when Nightingale "left the witness stand all of the terms essential to the validity of the commission agreement were crystal clear and undisputed." *Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.*, 108 R.I. at 602, 278 A.2d at 410. Once admitted, the terms of the contract were properly viewed as established facts for the purposes of this litigation. In rejecting Nightingale's reliance on the statute of frauds, we would remind him, as we have reminded others, that this court will not permit a litigant "to invoke the statute to sanction rather than to prevent an injustice. This, in our judgment, would be wrong." *Id.*[3]

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Arthur A. Thovmasian*, for plaintiff.

*Leary and Holland, Jeremiah R. Leary*, for defendant.

---

[3]In light of our disposition of this issue, we need not decide Adams-Riker's contention that the instant employment contract was for an indefinite term, terminable by either party at will, and thus could have been fully performed within a year from the time it was made. We have held that such contracts are not obnoxious to the statute of frauds. *Powless* v. *Pawtucket Screw Co.*, 116 R.I. 158, 352 A.2d 643 (1976); *see* Restatement, *Contracts* §198, Illustration 2.