382 A.2d 170.

THEODORE WEISS *vs.* G.L. &. H.J. GROSS, INC..

JANUARY 6. 1979.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is a civil action filed by plaintiff, Theodore Weiss, seeking payment for services rendered to the defendant, G.L. &. H. J. Gross, Inc. The defendant filed a counterclaim seeking repayment of money it had advanced to the plaintiff. The cause was heard by a justice of the Superior Court sitting with a jury. The jury returned a verdict awarding the plaintiff $4,806.30 plus interest and costs on the complaint and awarding the defendant $195.30 plus interest and costs on the counterclaim. The defendant appeals.[1]

The defendant brings two issues before us on appeal. First, defendant asserts that any agreement it had with plaintiff was oral and concerned the sale of real estate, thereby rendering any such agreement unenforceable because of the provisions of the Statute of Frauds, G.L. 1956 (1969 Reenactment) §9-1-4. Second, the defendant argues that the trial justice failed to fulfill his legal obligations in denying defendant's motion for a new trial.

The defendant, G.L. & H.J. Gross, Inc., is a real estate agency located in Providence. From 1964 to 1966, defendant enjoyed an exclusive franchise to sell real estate being developed in Florida by the Deltona Corporation of Florida (Deltona) to residents of Rhode Island. In January 1966, defendant received an additional franchise to sell Deltona property to residents of Worcester County, Massachusetts.

In September 1964, defendant hired plaintiff as a sales manager to hire, train and supervise a small staff to sell Deltona property. The plaintiff's compensation from September 1964 to January 1966, consisted of a weekly salary of $125 plus a commission of one percent of the sales price of

---

[1] Neither party has appealed the judgment on the counterclaim. Consequently, that verdict is not before us on appeal.

all Deltona land and one-half percent of the sales price of all Deltona houses sold to Rhode Island residents. The plaintiff's commision was an "override," so-called, entitling him to receive the agreed-upon percentage regardless of who actually sold the Deltona property.

The present dispute arose over the basis for plaintiff's compensation from January 1, 1966 to March 16, 1966, when plaintiff resigned his position with defendant. The plaintiff testified that one James C. Raleigh, an agent of defendant, agreed to pay plaintiff solely from commissions on the sale of Deltona property. Under this agreement, plaintiff was to receive a commission of two percent for land sold and one percent for houses sold to Rhode Island residents and one percent for land sold and one-half percent for houses sold to Worcester County residents. The plaintiff was also entitled to receive a weekly draw of $250 on his commissions and an additional $25 per week travel expenses.

Raleigh testified for defendant and denied ever making this agreement. He stated that after January 1, 1966, plaintiff's compensation was adjusted to allow him one-half percent on all sales to Worcester County residents plus $25 per week travel expenses.

Both parties agreed that plaintiff received $3,725 from defendant in 1966, but conflicting testimony was presented on what that figure represented. The plaintiff stated that the $3,725 comprised his weekly $250 draw and his transportation expenses for 11 weeks plus a commission of $700 owed to him for 1965 sales. Raleigh testified that the compensation represented plaintiff's full salary of $125 per week for 11 weeks, his $150 per week draw against commissions and a $700 payment for 1966 commissions.

The plaintiff argued that based on 1966 sales in Rhode Island and Worcester County during his term of employment, defendant owed him $5,506.30 for commissions. The

defendant, however, argued that if it owed plaintiff anything, the amount was $1,787.15. The jury returned a judgment of $4,806.30, $700 less than plaintiff claimed he was owed. The defendant appeals from that judgment.

The defendant first argues that the trial justice erred in allowing certain testimony into evidence, denying defendant's motion for a directed verdict, and charging the jury. These errors, defendant asserts, arose as a result of the refusal of the trial justice to accept defendant's argument that any oral agreement between the parties is unenforceable pursuant to the Statute of Frauds, §9-1-4, and that any evidence regarding such oral agreement is inadmissible.

The relevant portion of the Statute of Frauds states that:

"No action shall be brought:
* * *

"*Sixth.* Whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate.

"Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

The defendant argues that since plaintiff's claim for compensation is based upon commissions for the sale of real estate and since no agreement between the parties was put into writing, plaintiff is barred from attempting to recoup his earnings under the oral agreement.

We cannot accept this application of the Statute of Frauds advanced by defendant. Our decisions have recognized that the purpose of the sixth clause of the Statute of Frauds is to protect "the public against the unfounded claims of a specific class of persons, namely, real estate brokers and agents." *Heyman* v. *Adeack Realty Co.*, 102

R.I. 105, 108, 228 A.2d 578, 580-81 (1967). *See Peacock Realty Co.* v. *E. Thomas Crandall Farm, Inc.,* 108 R.I. 593, 596, 278 A.2d 405, 407 (1971); *Dooley* v. *Lachut,* 103 R.I. 21, 23-24, 234 A.2d 366, 368 (1967). Because of this legislative purpose, we have strictly construed the sixth clause of §9-1-4 in order to prevent real estate brokers and agents from attempting to collect commissions from owners of real estate in the absence of written agreements. *Zexter* v. *Cerrone,* 107 R.I. 92, 265 A.2d 328 (1970); *Wright* v. *Smith,* 105 R.I. 1, 249 A.2d 56 (1969); *Heyman* v. *Adeack Realty Co., supra.* The sixth clause of §9-1-4 does not apply to employment contracts between real estate brokers and agents and their employees.

The Michigan Supreme Court, in construing a statute very similar to our own, has also reached this result. *Thompson* v. *Carey's Real Estate,* 335 Mich. 474, 56 N.W.2d 255 (1953). The Michigan case involved a suit by an employee of a real estate agency against his employer. In its decision, the Michigan Supreme Court noted that the Legislature could not have intended

> "to select, from the whole realm of employer-employee contractual relationships the one existing between a real estate broker and his employee salesman for the application of a different standard of validity than that applicable to all the rest * * * . We can conceive of no characteristics peculiar to the broker-salesman relationship which might have suggested to the legislature the necessity for written contracts of employment in that field under circumstances where none is required in any other kind of employment." *Id.* at 476, 56 N.W.2d at 256-57.

The defendant argues that we must construe the Statute of Frauds strictly. Although our decisions have not dealt with an employer-employee relationship, defendant asserts that the language of §9-1-4 is unambiguous and applies to

that relationship as well as to the more common situation of seller-broker. While we have construed §9-1-4 strictly to protect sellers of real estate from the unfounded claims of brokers and agents, "[w]e do not view the compensation due from a real estate broker to his salesman-employee as being a commission within the contemplation of the statute." *Thompson* v. *Carey's Real Estate, supra* at 477, 56 N.W.2d at 257.

The defendant next argues that the trial justice erred in denying defendant's motion for a new trial. This court has stated that a trial justice, in passing on a motion for a new trial, must "consider in the exercise of his independent judgment all of the material evidence in the case in the light of his charge to the jury and to pass on its weight and the credibility of the witnesses." *Barbato* v. *Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964).

Our review of the decision by the trial justice denying defendant's motion for a new trial clearly indicates that he fulfilled his legal obligation to weigh the evidence and the credibility of the witnesses presented. The trial justice was of the opinion that the two witnesses were so equally credible that it was virtually impossible to choose between them. Although he stated that plaintiff's judgment would have been lower had he heard the case without a jury, he refused to substitute his judgment for that of the jury in a situation where credibility was so evenly balanced.

After reviewing the material evidence and assessing the credibility of the witnesses, the trial justice must decide

"[W]hether to approve the verdict even against doubts as to its correctness because the evidence is nearly balanced, or is such that different minds can naturally and fairly come to different conclusions thereon; or, in the alternative, to set it aside when his judgment tells him that it is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponder-

ance of the evidence." *Barbato* v. *Epstein, supra* at 194, 196 A.2d at 837.

In the case at bar, the trial justice correctly applied the former rule.

The party appealing an adverse ruling on a motion for a new trial assumes the burden of convincing us on appeal "that the trial justice failed to exercise his independent judgment in resolving the evidentiary conflicts and in ascertaining where the truth lay, or that in the performance of that evaluation process he either overlooked or misconceived material evidence or was otherwise clearly wrong." *Powless* v. *Pawtucket Screw Co.,* 116 R.I. 158, 161, 352 A.2d 643, 645 (1976). The defendant has failed to convince us that the trial justice's denial of the motion for a new trial was error.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Friedman & Kessler, Harold I. Kessler,* for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Thomas D. Gidley,* for defendant.