RHODE ISLAND FIVE, A Partnership

v.

MEDICAL ASSOCIATES OF BRISTOL COUNTY, INC.

No. 94–152–Appeal.

Supreme Court of Rhode Island.

Jan. 8, 1996.

Peter J. Comerford, Providence, for Plaintiff.

Justin T. Shay, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Medical Associates of Bristol County, Inc., from a Superior Court judgment that found a valid contract between the defendant and the plaintiff, Rhode Island Five, A Partnership. As a consequence of that finding, the Superior Court ordered specific performance of the contract, thereby granting the plaintiff a right-of-way over the defendant's land. We reverse. The facts and the procedural history relevant to our holding are as follows.

### Facts and Procedural History

In 1983, Anthony Nunes (Nunes) owned a parcel of land located east of Hope Street and north of Gooding Avenue in the town of Bristol, Rhode Island. The defendant owns real estate that abuts the Nunes property to the west, separating Nunes's property from Hope Street. Sometime in 1983, Nunes met with officers of defendant corporation to request an easement across defendant's property to Hope Street. In return, Nunes would construct at his expense a road over the easement to Hope Street, would relocate a traffic light on Hope Street to the intersection with the new road, and would install utilities along the new road. At the meeting Nunes presented a site plan that depicted a road that crossed defendant's property, due east from Hope Street and perpendicular to it. Nunes further indicated to defendant that he intended to develop on his property an "assisted living" facility for the elderly.

On April 7, 1983, defendant's president, Paul Botelho, M.D. (Botelho), responded to Nunes's proposal in a letter that read:

"In consideration of your proposal made at our meeting of last week, we have agreed to accept the concepts you presented with the following stipulations:

"1. We be allowed to review the final architectural plans with the exact location of the road before submission to any review board.

"2. Our agreement must specifically exclude low income and or 'Section 8' housing construction on your property.

"3. Our agreement must specifically prohibit the private practice of medicine from any buildings constructed on your property.

"In going forward with this project, I ask that you work with our Administrator in clarifying and solidifying these details."

On April 20, 1983, defendant's stockholders voted to approve the proposal for an easement on these terms.

Nunes made no further contact with defendant either to accept or to reject the stipulations contained in the April 7 letter, nor did he submit to defendant a proposed written agreement. Subsequent to the 1983 meeting, Nunes decided not to go forward with his plan to construct an assisted-living facility on his property, and in 1985 Nunes offered to purchase a portion of defendant's property in order to secure access from his property to Hope Street. The defendant, through its administrator, James Quigley (Quigley), rejected Nunes's offer on December 18, 1985.

Subsequent to defendant's rejection of his offer, Nunes and several other individuals formed the Rhode Island Five partnership, plaintiff in this action, the entity to which Nunes later transferred title to his property. On September 5, 1986, officers of the partnership, including one Arthur Beauregard, met with Quigley and expressed their desire to proceed with the original easement proposal. Quigley testified at trial that plaintiff's representatives presented the same site plan that Nunes had presented in 1983. In response, Quigley wrote to Nunes on September 8, 1986:

"This is a follow up to my meeting with Arthur Beauregard on September 5, 1986, and is to confirm my meeting with our Board of Directors.

"The Board of Directors agrees to confirm its commitment made in its letter to you on April 7, 1983. (copy attached)"

Attached to this letter was a copy of the April 7, 1983 correspondence.

Quigley testified that no mention was made at the September 5 meeting of any change in plaintiff's plans to develop its property into an assisted-living facility. Quigley further testified that from the September 5, 1986 meeting through the time he left defendant's employ in January 1988, plaintiff had no further contact with defendant in respect to the easement proposal. In early 1988, Ronald Souza (Souza), Quigley's successor as administrator for defendant, was approached by representatives of plaintiff with several plans for a road through defendant's property. All the plans presented to Souza indicated a road that crossed defendant's property in a curvilinear pattern rather than in a straight line as indicated on the original plans that Nunes had presented to defendant in 1983.

On May 10, 1988, the shareholders of defendant corporation reviewed plaintiff's new proposal and voted to deny plaintiff a right-of-way across defendant's property. Subsequent efforts by plaintiff to secure a right-of-way across defendant's land were unsuccessful, and on February 15, 1989, plaintiff filed the instant action, alleging that a contract that granted plaintiff a right-of-way was entered into in September 1986 by plaintiff and defendant. The plaintiff sought specific enforcement of the contract.

A jury-waived trial was held in the Superior Court on May 4 through 6, 1993. The trial justice issued a written decision on June 28, 1993, in which he found that plaintiff and defendant had entered into a binding contract, evidenced by the April 7, 1983, and September 8, 1986 letters of defendant.

On the basis of his findings, the trial justice ordered the parties to agree on "the precise location of a convenient, suitable and accessible easement." This mandate was confirmed in a July 21, 1993 amended judgment, and defendant's motion to stay the judgment pending its appeal was granted. The defendant's timely appeal alleged that the trial justice erred (1) in finding the existence of a contract, (2) in finding the contract enforceable, and (3) in specifically enforcing the alleged contract. We address these contentions seriatim.

## Existence of a Contract

■ The long-recognized essential elements of a contract are "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." Black's Law Dictionary 322 (6th ed.1990) (citing Lamoureux v. Burrillville Racing Ass'n, 91 R.I. 94, 98, 161 A.2d 213, 215 (1960)). In the instant case the trial justice found that the letters of April 7, 1983, and September 8, 1986, identified the grantor and the grantee of the easement and described "the interest in land to be conveyed as an easement across the defendant's land." The justice recognized, however, that these writings "do not describe the consideration for the conveyance" and "do not describe the precise size, the exact location of the terminals, the width or the course of the easement." Neither the competence nor the identity of the parties to the alleged contract is at issue. The identification, however, of the remaining elements—namely, consideration, subject matter, and mutuality of agreement and obligation—is intertwined with the reification of the proposed road and utilities.

■ It is well settled that in order to create a valid contract, the parties must intend to be bound by the terms of the agreement. UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp., 641 A.2d 75, 79 (R.I. 1994); Smith v. Boyd, 553 A.2d 131, 133 (R.I.1989). The reasonable inference to be drawn from the record before us, and from the April 7, 1983, and September 8, 1986 letters in particular, is that defendant expected more specific details from plaintiff regarding the location of and the type of improvements along the proposed right-of-way. It is amply clear that the April 7, 1983 letter evidenced defendant's willingness to negotiate with Nunes for the grant of an easement

in return for as yet unspecified improvements along that easement, all subject to the three stipulations enunciated by defendant. This willingness to negotiate is clearly the "commitment" that defendant reaffirmed in the September 8, 1986 letter. The April 7, 1983 letter explicitly sets forth the three stipulations as conditions precedent to the conclusion of agreement between the parties. That defendant clearly anticipated that ongoing negotiations would culminate in a written agreement is evidenced by the following statements in the April 7, 1983 letter:

"2. Our agreement must specifically exclude * * *

"3. Our agreement must specifically prohibit * * *

"In going forward with this project, I ask that you work with our Administrator in clarifying and solidifying these details."

The term "agreement" is used twice in the letter, not in the context of a past event but as an executory act, pending the "clarifying and solidifying" of details. Absent any evidence that plaintiff provided defendant with an opportunity to conduct such a review, we are of the opinion that the parties never arrived at the classic "meeting of minds," nor did they negotiate an agreement sufficient to support plaintiff's claim to a right-of-way to build what at that point was an unspecified type of road, with unspecified utilities, across an unspecified portion of defendant's property.

■ The trial justice determined that defendant's promise to grant plaintiff an easement "was supported by sufficient consideration which consisted of the plaintiff's promise to construct a suitable roadway on the easement with installed utilities at no expense to the defendant." The trial justice further found that "[t]he exact course and precise location of the right-of-way was not essential to the agreement between the parties" and that, although "[t]he easements shown on the 1988 drawings follow a 'gooseneck' rather than a 'straight-across' configuration, [t]he variation in these proposed courses was not material to the defendant's refusal to grant the easement as agreed."

The defendant contended that the trial justice's analysis "effectively strips Defendant of any bargained for consideration." Our review of the record leads us to the conclusion that the trial justice erred in finding consideration sufficient to create a contract. The requirement of consideration is designed primarily to ensure that a promisor will not be compelled to perform donative promises. 2 *Corbin on Contracts* § 5.2 at 17 (rev. ed.1995). We are not persuaded by plaintiff's contention that its offer to build a road and to install utilities along that road constitutes sufficient consideration to bind defendant. Accepting plaintiff's argument would lead to the anomalous conclusion that plaintiff's benefit—i.e., to be allowed to build a road,—was identical to its burden—namely, to be obligated to build a road.

In finding sufficient consideration, the trial justice applied the doctrine articulated by this Court in *McConnell v. Golden,* 104 R.I. 657, 247 A.2d 909 (1968). In *McConnell* we held that a validly granted easement entitles the grantee to a suitable and convenient right-of-way, even if the grant does not specify the location of the way. *Id.* at 663, 247 A.2d at 912. The defendant argued that *McConnell* is distinguishable from the instant case. We agree. The easement at issue in *McConnell* had been used by the plaintiff for fifteen years prior to litigation. The plaintiff before us has never utilized a way across defendant's property. More importantly, the *McConnell* opinion did not address the validity of a grant of an easement but only the particular rights of parties subsequent to the *undisputed* grant of a right-of-way. In contrast, the omission of particulars in the matter before us affects the very elements of the alleged contract in this case, namely, consideration, mutuality of agreement, and mutuality of obligation.

■ Additionally, plaintiff made no effort to pursue detailed negotiations with defendant in response to the 1983 and 1986 letters. The plaintiff's failure to accept or even to acknowledge defendant's stipulations, or to act on the original proposal, or to contact defendant between 1986 and 1988, would reasonably indicate an abandonment by plaintiff even if a contract had been formed initially. *See Jakober v. E.M. Loew's Capitol Theatre,*

*Inc.,* 107 R.I. 104, 265 A.2d 429 (1970) (holding that failure of one party to perform amounts to abandonment of contract).

The plaintiff's initial plan for a right-of-way called for a straight road cutting through defendant's property to an assisted-living facility on plaintiff's property. The defendant indicated its acceptance of the "concepts" presented by plaintiff. Yet plaintiff took no action until early 1988 when it approached defendant with an entirely new plan depicting a curving road leading to a condominium complex.

 In any case, defendant evidenced its clear intention to rescind any agreement with plaintiff that might have existed when, on May 10, 1988, its shareholders unequivocally rejected plaintiff's "gooseneck" right-of-way proposal. In cases in which a contract originally exists but the promised performance fails, such failure is sufficient grounds for rescission of the contract. *Turner v. Domestic Investment & Loan Corp.,* 119 R.I. 29, 33–34, 375 A.2d 956, 959 (1977)(quoting 1 Black, *Rescission of Contracts and Cancellation* § 158 at 461 (2d ed.1929)). The plaintiff avers that its proposal to build a road and to install utilities constitutes consideration in support of the alleged contract with defendant. Accepting plaintiff's contention *arguendo,* we are of the opinion that such consideration failed as a result of plaintiff's unilateral material alteration of the terms of the proposed agreement and its delay in performing its obligations.

### Enforceability

 Having concluded that no contract was formed between the parties to support the grant of an easement across defendant's land, we need not discuss the matter of enforceability. Nevertheless, we shall address briefly the question of whether the contract alleged by plaintiff to exist would be enforceable. Rhode Island's statute of frauds, G.L. 1956 (1985 Reenactment) § 9–1–4, provides in part that "[n]o action shall be brought: (1) * * * to charge any person upon any contract for the sale of lands * * * (6) * * * unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

 This Court has recognized that the statute governs the conveyance of easements. *Ham v. Massasoit Real Estate Co.,* 42 R.I. 293, 298–99, 107 A. 205, 208 (1919). In the case at bar the trial justice found "all the factual elements necessary to establish a binding contract between the parties have been proved by clear and convincing credible evidence." In making this determination, he considered whether the 1983 and 1986 letters together with minutes from defendant's shareholder meetings were sufficient to satisfy the statute of frauds. In order for a memorandum to satisfy the statute in respect to the conveyance of an interest in land, the writing must identify:

"the seller and the buyer, their respective intention to sell and to purchase, a description of the subject matter of the sale, the purchase price, and terms of payment." *MacKnight v. Pansey,* 122 R.I. 774, 782, 412 A.2d 236, 241 (1980).

Substituting the proffered consideration, namely, the installation of a road and utilities, for the purchase price, it is clear that the statute was not satisfied. As discussed *ante,* the memoranda relied upon by the trial justice do not specify the consideration, a requirement in a bargained-for exchange.

Moreover, the subject matter of the conveyance cannot be ascertained from the memoranda. Citing *McConnell,* the trial justice found that, because "it is not necessary for even a formal grant of an easement of right of way to specify the precise location of the easement, * * * it should not be necessary that a written contract or promise be so specific or precise." The trial justice's application of the *McConnell* decision is misplaced, however. *McConnell* required neither a determination that a contract existed nor an analysis of a contract's enforceability under the statute of frauds.

The lack of any consensus between the parties on the form of the proposed easement and on its location on defendant's property is evidenced by the several different site plans that plaintiff produced. *See UXB*

*Sand & Gravel, Inc.,* 641 A.2d at 79 (where record (1) indicated that "instead of accepting the terms of the * * * proposed agreements," a potential purchaser of land had merely "suggested revisions," and (2) manifested disagreement between parties in regard to what cash deposit was required under alleged contract, intent to be bound was absent). Early proposals presented to defendant involved a straight road connecting plaintiff's property to Hope Street. Later plans depicted a road winding through defendant's property. The only reference made in any of the memoranda to an easement through defendant's property is in the minutes of defendant's shareholder meeting on April 20, 1983. Specifically, the vote to approve the grant of an easement to plaintiff took place at the shareholder meeting after a presentation by Botelho, who explained plaintiff's proposal for a *straight* road in connection with an assisted-living facility that clearly was in defendant's interest. The trial justice unreasonably concluded that this reference represented a sufficient description of an easement that plaintiff subsequently transformed into a winding road through defendant's property in connection with a condominium complex that was not necessarily in defendant's interest.

 The trial justice found that the shortcomings of the memoranda were cured by the sworn admissions of defendant's officers. Although insufficiencies in written memoranda can be remedied by sworn admissions of the party to be charged, *Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.,* 108 R.I. 593, 278 A.2d 405 (1971), the record contains no admissions by any of defendant's agents sufficient to remedy the inadequacies of the written memoranda. Admissions may obviate application of the statute of frauds when "the party to be charged admits *all* of the terms essential to the validity of [a] contract," *UXB Sand & Gravel, Inc.,* 641 A.2d at 80 (quoting *Adams–Riker, Inc. v. Nightingale,* 119 R.I. 862, 867, 383 A.2d 1042, 1045 (1978)), and where said admissions render all essential terms of an agreement "crystal clear and undisputed." *Peacock Realty Co.,* 108 R.I. at 602, 278 A.2d at 410.

The decision of the Superior Court takes note of Quigley's statement on the stand that "the proposal of the plaintiff was 'an arrangement the defendant agreed to go forward with.'" Even assuming that this statement was more than simply an indication that defendant intended to "go forward with" negotiations, we hold this admission to be insufficient to remedy the lack of any written statement specifying the subject matter or consideration of the alleged contract. Quigley's admission that under plaintiff's proposal plaintiff was to "construct a 'road' and 'bring in utilities' at its cost" in return for an easement lacks sufficient specificity to establish the elements of the contract, particularly in this instance in which defendant specifically required participation in formulating the details of a forthcoming agreement.

### Specific Enforcement

In light of our determination that no enforceable contract was created by the interactions between the parties, we hold that the trial justice erred in specifically enforcing the defendant's alleged promise to convey to the plaintiff a right-of-way across its property.

In summary, therefore, the appeal of the defendant is sustained and the judgment of the Superior Court is reversed. The papers may be returned to the Superior Court.