## LAURA B. HAM *vs.* MASSASOIT REAL ESTATE CO.

### JULY 2, 1919.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Stearns, and Rathbun, JJ.

(1)  *Contracts.  Fraud.*

The mere non-performance of an oral contract within the statute of frauds, where no relation of trust and confidence exists, does not constitute fraud.

(2)  *Deeds.   Restrictions.    Easements.   Statute of Frauds.   Equity   Part Performance.*

Complainant claimed that during negotiations which resulted in the purchase of a lot on a recorded plat, respondents' agents represented that all lots on a portion of such plat were subject to the same restrictions contained in complainant's deed and would be sold subject to such restrictions. On bill seeking to restrain respondent from conveying certain lots free from restrictions:—

*Held,* that, no actual fraud being established, complainant was not entitled to enforce an oral agreement to establish restrictions which would be negative easements in respondent's land; this coming within the prohibition both of the Statute of Frauds and the Statute on Conveyance of Estates.

*Held,* further, that the equitable rule that part performance will take a contract out of the statute of frauds, did not apply, since this was not a suit to obtain or reform a deed, but one to enforce an oral contract.

BILL IN EQUITY.  Certified by Superior Court under cap. 289, sec. 35.

RATHBUN, J.   This is a bill in equity seeking to enjoin the respondent from conveying certain house lots free from restrictions such as are contained in a deed from respondent to complainant's husband; also seeking to compel respondent to remove certain buildings which are located within the street lines as laid out on the plat.

The bill was heard on bill, answer and proof by a justice of the Superior Court who, without rendering any decision, certified the case to this court, in accordance with the provisions of General Laws, 1909, Chapter 289, Section 35.

In 1903 the respondent platted certain land situated south of the railroad at Oakland Beach and caused the plat to be recorded.   Two streets appear on this plat running south from the railroad location to the shore and approximately parallel with each other, viz., Maple street and Oakland Beach avenue.   The complainant's claim is that during the

negotiations which resulted in a purchase of lot No. 866 on said plat by complainant's husband the respondent, by its agents, Brown and Deio, represented to complainant and her husband that all lots between Maple street and Oakland Beach avenue and also the row of lots on the easterly side of Oakland Beach avenue were subject to the same restrictions as were incorporated in respondent's deed conveying lot No. 866 to complainant's husband and that all of its lots within this area would be held or sold subject to said restrictions.

On May 7, 1910, respondent conveyed by warranty deed lot 866 within the above described area to complainant's husband. The lot was subsequently conveyed to complainant and is now owned by her. The deed to complainant's husband contained the following restrictions, viz.:

"TO HAVE AND TO HOLD the aforegranted premises . . . upon condition nevertheless :

"First : That no building at any time shall be erected or placed upon said premises within ten feet of the line of any street, avenue or park, as laid out upon said plat, nor shall any barn or stable be erected or placed upon said premises, nor shall any house be erected upon said premises that shall cost less than Two Thousand Dollars, nor shall any house or building erected thereon be used at any time for any other purpose than as a residence, and for the use of a private family.

"Second : That said premises nor any part thereof shall not at any time be used for carrying on any mechanical or manufacturing business, or public trading of any kind, nor shall any spirituous or intoxicating or malt liquors be at any time made, sold or kept for sale at any time therein or thereon.

"Third : The foregoing conditions shall be binding upon the grantee his heirs, successors and assigns."

Later complainant purchased from respondent lot 865, situated within the above described area. The deed of lot 865 contained restrictions identical with those contained in the deed to complainant's husband. Previous to the sale

to complainant's husband, respondent had conveyed, subject to restrictions, two lots in the above described area. Within one month thereafter it conveyed free from restrictions a lot within the same area; thereafter several conveyances were made with the same or different restrictions and many lots were conveyed by deeds containing no restrictions. Before suit was commenced respondent had entered into agreements to sell free from restrictions seventeen other lots within this area. There was no covenant in the deed to complainant's husband or in any of the other deeds binding the respondent to hold and convey the remaining lots subject to restrictions.

Hedley V. Ham, complainant's husband, testified as follows : "He said his idea in restricting those lots was to have a good class of houses built in that area."  .  .  . "Yes, he said he had built a very nice house there and the reason he put on the restrictions was to have that area restricted and have a nice class of houses put up there." Laura V. Ham testified as follows :   "He told us they were restricted and all that whole plat right up through there was and really got us to agree to put up a good house so as to advertise the plat for other houses and to get our friends if we could."  .  .  .  "No, he told us they were already restricted; he said, 'And my house cost $8,000.00, and my two daughters built right besides me, and perhaps my son will build later, and, of course, I have restricted all this land right through here." Brown and Deio having deceased were unable to either affirm or deny the allegations and testimony relative to oral representations.   The respondent in its answer denies making said oral representations and sets up the statute of frauds and urges that if any such oral representations or agreements were made they were merged in the deed and that complainant is barred by the statute of frauds.

Whatever may have been the original intention of the respondent, the land had not been restricted when the complainant purchased and thereafter no consistent scheme to restrict was followed.   A much larger number of lots were sold free from restrictions than were conveyed subject to

restrictions.   Respondent's land never became restricted by
reason of any scheme to restrict.   Whether the parol agree-
ment to restrict could be proved by parol evidence, pro-
viding that nearly all of the conveyances had been made
subject to the same or substantially the same restrictions,
we do not decide.

The complainant argues that she is entitled to relief on
the ground of fraud, estoppel and part performance.

(1)     The proof does not show and the complainant does not
contend that actual fraud was committed by Brown or Deio
in representing that the land either was or would be re-
stricted.   No relation of trust or confidence existed between
the parties.   In *Sprague* v. *Kimball*, 213 Mass. 380, the
court said :   "But the mere non-performance of an oral
contract, within the statute which is pleaded, as in the case
at bar, and where no relation of trust and confidence exists,
does not constitute fraud."

Courts of equity sometimes grant relief on the ground of
estoppel and part performance even when there was no
fraud in the inception of the contract.   For example, A.
orally agrees to sell a house to B. for a stipulated sum and
B., relying upon the oral contract, with full knowledge of A.
enters upon the land and erects a house, whereupon. A.
changing his mind decides not to give B. a deed.   In such
case it is clear that a court of equity would decree specific
performance notwithstanding the statute of frauds.   A.
knowing that B. was relying upon the oral contract per-
mitted B. to expend his time and money in constructing a
house on A.'s lot.   A. would be estopped to set up the
statute of frauds thereby preventing proof of the contract
because such conduct would be fraudulent.   The case would
be lifted out of the statute of frauds.   His conduct is an
admission that a contract existed between the parties.   But
equity will not grant relief in all cases where it would appear
to be fraudulent to set up the statute of frauds.   In the case
suggested for illustration there is evidence to aid the court
outside of the story of the complainant and his witnesses.
The house is visible and tangible evidence that the parties

have entered into a contract. The court will inquire into its terms and compel the vendor to comply with his part of the oral agreement.

The complainant argues that the payment of the purchase price of the lot constituted such a part performance as will entitle her to relief in equity; also that the expenditures of money in the erection of the house made with knowledge of Brown estopped the respondent to set up the statute of frauds.

The lot was purchased and the house erected because complainant and her husband desired a summer residence at Oakland Beach. It is as reasonable, at least, to assume that the house was erected for the purpose of occupancy by complainant and her family, and that Brown supposed it was being constructed for that purpose as it is to assume that the house was built because she relied on Brown's oral representations or promise. She built and occupied a house as has been done by millions of other persons who expected to obtain no right or interest in their grantor's remaining land. The complainant simply improved her own real estate. She made no expenditures or improvements on the grantor's remaining land on which she seeks to impose a burden. See *Peckham* v. *Barker*, 8 R. I. 17.

The court in *Sprague* v. *Kimball, supra,* at p. 384, used the following language : "Nor did the plaintiffs, on whom and not on the defendant the burden of part performance rests where this ground for relief is sought, by taking title, entering into occupation and making improvements on their own estates in reliance upon the parol agreement, acquire any legal or equitable interest in the defendant's remaining land"; citing *Caton* v. *Caton*, L. R. 1 Ch. 137; *Graves v. Goldthwait*, 153 Mass. 268, 269; *Low* v. *Low*, 173 Mass. 580, 582; *Sarkisian* v. *Teele*, 201 Mass. 596.

The equitable rule that part performance will take a contract out of the statute of frauds does not apply. This is not a suit to obtain or reform a deed. It is an attempt to enforce an oral agreement. The complainant's husband purchased a house lot and, upon payment of the purchase

price, received a deed which is a solemn instrument under seal intended to recite definitely and accurately everything which the grantee takes and is to enjoy in consideration of the purchase price. See *Pyper* v. *Whitman*, 32 R. I. 510; *Norton* v. *Ritter*, 121 App. Div. N. Y. 497; *Sprague* v. *Kimball*, 213 Mass. 380; *Squire* v. *Campbell*, 1 Myl. & Cr. 459.

These restrictions if established are negative easements in respondent's land. *Kenyon* v. *Nichols*, 1 R. I. 411; *Foster* v. *Browning*, 4 R. I. 47; *Green* v. *Creighton*, 7 R. I. 1; *Pyper* v. *Whitman*, 32 R. I. 510; *Sprague* v. *Kimball*, 213 Mass. 380, 100 N. E. 622; *Sargent* v. *Leonardi*, 223 Mass. 556, 112 N. E. 633; *Trustees* v. *Lynch*, 70 N. Y. 440; *Norton* v. *Ritter*, 121 App. Div. N. Y. 497.

Our statute of frauds and statute on "The Conveyance Of Estates" each forbid the establishing of an easement on parol testimony.

"No action shall be brought :—*First.* Whereby to charge any person upon any contract for the sale of lands, tenements or hereditaments, or the making of any lease thereof for a longer time than one year;" . . . "Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized." Gen. Laws, Chap. 283, § 6.

"Every conveyance of lands, tenements, or hereditaments, absolutely, by way of mortgage, or on condition, use or trust, for any term longer than one year, and all declarations of trusts concerning the same, shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land-evidence in the town or city where the said lands, tenements or hereditaments are situated." Gen. Laws, Chap. 253, § 2.

Each of the above statutes contains the word "hereditaments". An easement is a hereditament and an interest in land capable of creation or transfer only by operation of

law, or by grant or prescription. Words and Phrases (Second series) Vol. 2, page 213.

This question has been considered and determined in this State in the recent case of *Pyper* v. *Whitman*, 32 R. I. 510. The facts in said case were admitted to be true on demurrer. The case came to this court upon appeal from decree of the Superior Court sustaining the demurrer and dismissing the bill. The complainant purchased a tract of land from the respondent relying on a plat exhibited as the time of the sale which showed a contemplated street running along the back end of the property purchased by the complainant. This plat was extensively used by the respondent in advertising his land for sale. The plat was posted in several places in the vicinity. At the time of purchase the respondent represented to the complainant that all of the streets designated upon the plat would be laid out and opened for public use. The complainant relying upon these representations purchased the property and alleged that he paid a larger price therefor because of the fact that a street was laid out along the back end of the same as shown by the plat. There was no reference to the plat or to the street in question in the deed to complainant. The property was replatted by the respondent and the street in question was moved one hundred feet to the west leaving a row of house lots between complainant's property and the street. The bill prayed that the respondent might be compelled to lay out the street as shown on the original plat. The demurrer to the bill of complaint was sustained and upon an appeal the action of the Superior Court was affirmed. In considering the case this court said: "There being, then, no grant of a right of way by express terms by the deed, or by reference to the plat, no claim of a right of way acquired by implication by reason of any actual existing way in use as an apparent and continuous easement, and no claim of a right of way by necessity, we are unable to find that the complainant has acquired any right of way in Conimicut avenue (so-called) merely by the exhibition of a plat to him

prior to the sale of the land to him, on which plat there was a street delineated and shown under the name of Conimicut avenue."

The only distinctions that can be drawn between the case of *Pyper* v. *Whitman* and the case now under consideration is that the former case involved the consideration of what might be termed a "positive easement," viz., a right of way, and the present case concerns a negative easement, viz., a restriction upon the land of the respondent company and it does not appear in *Pyper* v. *Whitman* that the complainant erected a house on the land. These distinctions are immaterial. The second distinction has been considered above. The evidence in *Pyper* v. *Whitman* was far stronger as to the character of the representations alleged to have been made than in the present case and the added element was present in that case of a plat duly laid out and used extensively for advertising purposes. To this extent there was a written or rather printed paper which was some evidence of what was the original intention of the parties. In the present case we have no evidence of any tangible nature by which the fact (if it is a fact), that representations were made by the respondent's agents, can be established. To supplement the oral testimony of the complainant, her husband and two other witnesses—each testifying to different conversations held at different times with the company's treasurer—we have nothing but a plat on which a pencil mark has been drawn around certain house lots by some person at some time. We are aware of the fact that in some jurisdictions there are cases which appear to be opposed to the doctrine laid down in *Pyper* v. *Whitman, supra,* but we think that our conclusions are not only founded on the better reason but are supported by the great weight of authority. *Pyper* v. *Whitman,* 32 R. I. 510; *Norton* v. *Ritter,* 121 N. Y. App. Div. 497; *Sprague* v. *Kimball,* 213 Mass. 380; *Squire* v. *Campbell,* 1 Myl. & Cr 459.

In *Hall* v. *Solomon,* 61 Conn. 476, each of several purchasers, including defendant, entered into a parol agreement

with the grantor, "that no portion of the premises so sold should be used for the sale of intoxicating liquors. This agreement was in each case a part of the consideration of the sale." The court evidently found that the whole tract had been restricted and that each lot owner, when he purchased, understood and agreed that his lot would be restricted. Upon complaint of grantor and other lot owners, the defendant was enjoined. The court found that the oral agreement was not an agreement for the sale of an interest in or concerning real estate. We have already stated that the restrictions contended for in this case are easements and interests in land. The court in *Hall* v. *Solomon* cited *Tallmadge* v. *East River Bank*, 26 N. Y. 105. The latter case is also cited in the complainant's brief in this case. The language used in *Norton* v. *Ritter, supra,* namely, "The agreement was deemed valid in *Tallmadge* v. *East River Bank* (26 N. Y. 105) whether correctly or not" indicates that there was at least a question in the mind of the New York court whether the latter case was correctly decided.

We find that the complainant is not entitled to have the restrictions contained in the deed to her husband imposed upon the respondent's house lots.

It appears in evidence that a "plat office" building and two other small buildings, used as stores are located within the street lines at the junction of Warwick avenue and Oakland Beach avenue. Counsel for respondent admitted in argument that respondent was bound to remove all buildings under its control which were located within the street lines. For a long time the respondent in connection with its business used the "plat office." Mr. Ham testifies that Brown, the respondent's treasurer, leased to tenants the two small store buildings. The complainant is entitled to a decree for the removal of these buildings.

On July 7, 1919, at ten o'clock A. M., parties may present decree in accordance with this opinion.

*George F. Troy*, for complainant.
*Wilson, Churchill & Curtis*, for respondent.