[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The plaintiff in this case is a Rhode Island general partnership which owns land in Bristol, Rhode Island, on which it is developing a residential condominium project called Bristol Woods. The defendant is a Rhode Island corporation which also owns land in Bristol, Rhode Island. The defendant's land lies between the plaintiff's land and development and Hope Street, a public highway in the Town of Bristol. The plaintiff asks this Court to order specific performance of a promise it alleges the defendant made to grant the plaintiff an easement of right of way across the defendant's land from Hope Street to the plaintiff's land.
I.
Sometime in 1983 before April 7, Anthony A. Nunes proposed to officers of the defendant that they grant him an easement through their property from Hope Street to his property to the east. He proposed to construct a road on the easement at his own expense, to move a traffic light on Hope Street to the intersection of the new road and away from the medical center operated on the defendant's property and to bring in utility service on the new road to be available to the defendant for the further development of its own land. Mr. Nunes proposed to develop an "assisted living" facility for the elderly on the land to be served by the proposed roadway.
On April 7, 1983, Paul A. Botelho, M.D., the defendant's president, and an authorized agent, wrote and signed the following letter to Mr. Nunes:
 "In consideration of your proposal made at our meeting of last week, we have agreed to accept the concepts you presented with the following stipulations:
 1. We be allowed to review the final architectural plans with the exact location of the road before submission to any review board.
 2. Our agreement must specifically exclude low income and or "Section 8" housing construction on your property.
 3. Our agreement must specifically prohibit the private practice of medicine from any buildings constructed on your property.
 In going forward with this project, I ask that you work with our Administrator in clarifying and solidifying these details." (Emphasis supplied.)
On April 20, 1983 the defendant's stockholders met and voted to approve the granting of the proposed easement according to written minutes of the meeting signed by the secretary and an authorized agent of the defendant. The pertinent portion of the minutes reads as follows:
 "President Paul A. Botelho, M.D., called the meeting to order and an explanation of a proposal to grant an easement through property owned by the Corporation was presented by the Administrator and Dr. Botelho.
 After discussion, the President called for a vote to approve or reject the proposal to grant an easement.
 The vote to approve the easement was tallied as 9 in favor, 2 opposed." (Emphasis supplied.)
The 1983 documents do not specifically describe the location, course and size of the easement nor do they set out the obligations of the plaintiff with regard to the improvements in the right of way. The evidence, nevertheless, clearly shows that the easement was to be wide enough to carry an approved roadway intersecting with Hope Street on its easterly side north of the then current location of a traffic signal at the driveway to the defendant's medical building. The proposed roadway was to be laid out on a straight course easterly by the most direct and shortest route to the plaintiff's land. The first condition in the April 7, 1983 letter suggests that the parties understood that the location of the easement was subject to change.
After some fruitless discussion in 1985 that Mr. Nunes might purchase some part of the defendant's land, the plaintiff succeeded to Mr. Nunes' title to the land to the east of the plaintiff's property. In order to be assured that they still had an agreement from the defendant to grant them an easement representatives of the plaintiff met with representatives of the defendant on September 5, 1986. On September 8, 1986, James T. Quigley, Administrator and authorized agent of the defendant wrote and signed the following letter to Mr. Nunes one of the plaintiff's general partners:
 "This is a follow up to my meeting with Arthur Beauregard on September 5, 1986, and is to confirm my meeting with our Board of Directors.
 The Board of Directors agrees to confirm its commitment made in its letter to you on April 7, 1983. (copy attached)" (Emphasis supplied.)
Mr. Quigley insisted in his testimony that he expected, both in 1986 and in 1983, that a detailed written agreement, embodying the grant of the easement and including the stipulations set out in the April 7, 1983 letter, would be forthcoming. It was his understanding that the plaintiff in 1986 intended to go forward with the same proposal propounded by Mr. Nunes in 1983 and that the plaintiff's land would be developed for "assisted living" facilities. Mr. Quigley left his position as the defendant's administrator in January 1988. There was no further contact between him and anyone representing the plaintiff regarding the easement after September 8, 1986.
The evidence shows that the plaintiff had decided to develop its land as residential condominiums in mid-1986. Defendant's Exhibit C, a 1988 memorandum from Martin Adler to Arthur Beauregard, refers to ". . . the inception of our assignment in mid-1986 for the R.I. Five on the project now called Bristol Woods . . ." Also, Plaintiff's Exhibit 4, invoices from Garofalo Associates, Inc., refers to services "in accordance with our proposal of August 8, 1986." Mr. Nunes furthermore testified that the partnership had formed its plans to change the nature of the development before Mr. Beauregard spoke to Mr. Quigley in 1986. The Court is satisfied that Mr. Quigley is mistaken in his testimony that he assumed in September 1986 that the plaintiff was still planning to construct "assisted living" facilities. He was correct, however, in his understanding that the plaintiff still intended to construct a "straight-across" roadway from Hope Street to the Bristol Woods project.
In 1987, clearly in reliance on the assurance in the letter of September 8, 1986, the plaintiff authorized Garofalo 
Associates, Inc. to proceed with the engineering work preliminary to developing Bristol Woods. It also engaged the services of Katharine V. Stark to study the condominium housing market in Warren and Bristol, Rhode Island. Her study is dated March 1987. A diagram of the proposed Bristol Woods site, attached as Exhibit C to Technical Appendix Number Two to her study, shows a "New Access Road" running straight across the defendant's land from Hope Street to the Bristol Woods project. Between April 6, 1987 and November 3, 1988 the plaintiff paid Garofalo $65,510 for engineering and planning services. Katharine Stark was paid $5862.83 for her study.
Mr. Nunes testified that the partnership pursued its preliminary plans to develop a residential condominium project in reliance on the defendant's promise to grant the plaintiff the easement it needed to get to Hope Street. There are some other access routes to the site from other public highways. One is from Broad Common Road. The plaintiff did not regard Broad Common Road as desirable as Hope Street, esthetically or economically. A right of way across other land between Bristol Woods and Hope Street existed but was not useable because of wetlands constraints. On cross-examination Mr. Nunes conceded that access to Hope Street was possible from Verndale Circle, another public highway which abuts other land of the plaintiff. The Bristol Woods site was not and is not totally land-locked.
A new access road through the defendant's property would not only benefit the plaintiff but would also substantially improve the value of the unused portions of the defendant's property. Some of the defendant's shareholders, all physicians who used the center's facilities, wanted to build an addition to the center for surgery. Others wanted, as Mr. Nunes put it, "to turn the land into money" as residential lots. The road proposed by the plaintiff would have cost approximately $160,000, the whole burden of which would be undertaken by the plaintiff.
The invoices from Garofalo Associates indicate that it proposed on February 26, 1988 to do the surveys, studies and design work necessary to lay out an access road through defendant's land. On May 3, 1988 Garofalo was requested to prepare a schematic plan of the area in the vicinity of the Medical Center, to show the edge of the wetland and a preliminary location of the "new access road." That schematic was revised on May 9, 1988. The Court is satisfied that Plaintiff's Exhibit 8 is a marked-up reduced copy of the May 3, 1988 diagram and that Exhibit 7 is a reduced copy of the May 9, 1988 revision.
Mr. Ronald Souza succeeded Mr. Quigley as the defendant's acting administrator in January 1988. He remembers being approached by representatives of the plaintiff in December 1987 or early in 1988 to discuss the road through the Medical Center property. They showed him a number of plans, the first showing one route and the last some time in May 1988 containing the original route and one alternate. The latter is obviously Exhibit 12, the May 9, 1988 revision. On May 10, 1988 the defendant's shareholders, meeting as the shareholders of Medical Associates of Rhode Island, Inc., agreed as follows:
 "It was agreed upon unanimously that any proposal for a right of way through our property would be denied."
Although Mr. Souza testified that he communicated "the doctors" apparent categorical denial to the plaintiff's representatives, they continued to communicate with him to see if there was any "change of heart" by the doctors. Finally, on December 27, 1988, at the direction of the defendant's president, Mr. Souza wrote to Mr. Joseph Paolino, one of the general partners in the plaintiff partnership:
 "The Board of Directors have met regarding the issue of a right of way.
 Presently, the Board wishes not to make a decision since future plans for the land are uncertain."
II.
The Court finds the following facts to have been proved by clear and convincing, credible and competent evidence:
1. The defendant promised to grant an easement of right of way across its land to the plaintiff.
2. That promise was supported by sufficient consideration which consisted of the plaintiff's promise to construct a suitable roadway on the easement with installed utilities at no expense to the defendant.
3. The promises of the defendant and the plaintiff were mutual and reciprocal and the product of a meeting of their minds.
4. No definite time was fixed for the execution of the respective promises of the parties, but it was their mutual intent that there would be no unreasonable delay in performance.
5. There are notes and memoranda of the defendant's promise in writing signed by persons lawfully authorized by the defendant.
6. These notes and memoranda:
 a. Identify the grantor and grantee of the easement.
 b. Describe the interest in land to be conveyed as an easement across the defendant's land.
 c. Do not describe the consideration for the conveyance.
 d. Do not describe the precise size, the exact location of the terminals, the width or the course of the easement.
 e. Make reference to a proposal from the plaintiff to the defendant which was known to the defendant.
7. An authorized agent of the defendant at the time of defendant's promise testified under oath at the trial:
 a. That the defendant agreed to grant to the plaintiff an easement from Hope Street to Bristol Woods across the defendant's land.
 b. That the plaintiff agreed to construct a suitable road with installed utilities available to the defendant on the easement at no expense to the defendant.
 c. That the entrance to the defendant's parking lot would be moved northward from its present location.
8. No authorized agent for the defendant testified that the defendant ever agreed to any specific location or course for the easement.
9. In reliance on the defendant's promise the plaintiff expended sums of money for a marketing survey and for engineering plans for a condominium project in Bristol Woods, as well as for the lay-out of the proposed roadway itself.
10. The plaintiff would not have proceeded with its planned condominium project if it did not have the defendant's assurance that it would be granted access to Hope Street through the defendant's property.
11. The stipulations or conditions required by the defendant have been accepted and agreed by the plaintiff.
12. The parties intended to execute a detailed formal agreement once a final location for the easement had been established for submission to local and State regulatory agencies having jurisdiction.
13. The parties did not objectively intend that the binding effect of their basic agreement would depend on the execution of a more detailed document. In making this finding the Court has applied the test suggested in Smith v. Boyd, 553 A.2d 131, 134 (R.I. 1989). No evidence was presented as to trade usage with regard to detailed agreements regarding easements of right of way such as the one at issue. The books are filled with cases where abutters have entered into informal agreements respecting rights of way. There is no evidence of any prior practice between these parties. There was no credible evidence as to who was to draw any detailed agreement, although the most reasonable inference from Mr. Quigley's testimony was that he expected it to be the plaintiff and not some person other than the parties. Finally, the statements made by the parties at the time regarding a detailed agreement are ambiguous, to say the least. Mr. Nunes never made any statements regarding a detailed agreement. Neither Mr. Quigley, nor any other representative of the defendant, including Manuel daSilva, ever said at the time that the defendant did not intend to be bound contractually until a written agreement was executed. There is no evidence whatever that the defendant ever communicated to the plaintiff any intent, subjective or objective, not to be bound until and unless all the details of their agreement had been reduced to writing. The defendant here will not have lost its autonomy to choose what agreements will bind it, if this promise is enforced. It will have lost only the power to capriciously back away from its contractual obligations.
14. The Court rejects the testimony of Manuel daSilva that the transactions between the parties in 1983 and 1986 were merely preliminary negotiations and that the defendant intended to withhold a final decision until it had more information regarding the location of the road and the nature of the plaintiff's development of Bristol Woods.
15. The original proposal or concept presented by the plaintiff to the defendant in 1983 and 1986 showed a right-of-way perpendicular to Hope Street and following a straight course across the defendant's land to the plaintiff's land.
16. The exact course and precise location of the right-of-way was not essential to the agreement between the parties.
17. The defendant agreed to leave the construction details of the proposed road to the plaintiff.
18. The plaintiff in 1988 proposed two alternate locations and courses for the easement, both different from the course shown in 1986. The locations and courses proposed in 1988 were designed to meet the development plans of the defendant, so far as they had been made known to the plaintiff. These plans also were designed to deal with wetlands problems on the land of both parties. The easements shown on the 1988 drawings follow a "goose-neck" rather than a "straight-across" configuration. The variation in these proposed courses was not material to the defendant's refusal to grant the easement as agreed.
III.
The defendant argues that the plaintiff's claim is barred by the Statute of Frauds (G.L. 1956 (1985 Reenactment) § 9-1-4)
because there is no sufficient memorandum in writing of its promise or agreement to convey an easement to the plaintiff. An easement is a hereditament mentioned in the statute. Ham v.Massasoit Real Estate Co., 42 R.I. 293, 298, 107 A. 205 (1919). A sale is any conveyance for adequate legal consideration.Crossman v. Erickson, 570 A.2d 651, 655 (R.I. 1990). In order to satisfy the requirements of the Statute of Frauds a memorandum in writing must set out who are the seller and the buyer, their respective intention to sell and to purchase, such a description of the subject matter of the sale as may be applied to a particular piece of land, the purchase price, and the terms of payment if the sale is not for cash. Sholovitz v. Noorigian,42 R.I. 282, 285-86, 107 A. 94, 95 (1919).
The written memoranda in this case, consisting of the letters of April 7, 1983 and September 8, 1986 and the corporate minutes of April 20, 1983 clearly identify a "seller" and "buyer." The defendant "agreed to accept the concepts you presented," referring to the plaintiff in its letter of April 7, 1983. The defendant considered "a proposal to grant an easement through property owned by the Corporation" at its meeting on April 20, 1983, at which it voted "to approve the easement." In the letter of September 8, 1986 the defendant's Board of Directors agreed "to confirm its commitment made in its letter" of April 7, 1983. The language used in these three writings could not more strongly express an intention by the defendant to "sell" an easement to the plaintiff. The word "commitment" in ordinary American speech signals a strong sense of obligation to carry out some objective. The letter of April 7, 1983 refers to "the concepts you presented" and to "your proposal" with "you" and "your" clearly referring to the plaintiff. The plaintiff's intent to "purchase" an easement is clearly discernible.
The remaining two elements present the real problems in this case. Does the language, "an easement through property owned by the Corporation," in the Minutes of April 20, 1983 satisfy the requirement that the writing set out "such a description of the subject matter of the sale as may be applied to a particular piece of land?" Is the absence of any reference to the consideration furnished by or on behalf of the plaintiff to support the grant of the easement fatal to the sufficiency of the writings under the Statute of Frauds?
The defendant contends that the location of the easement was essential to its agreement to convey an easement to the plaintiff. Accordingly, it argues that a mere reference to the particular land through which the right of way is to run is not sufficient to satisfy the Statute. Since it is not necessary for even a formal grant of an easement of right of way to specify the precise location of the easement, McConnell v. Golden,104 R.I. 657, 663, 247 A.2d 909, 912 (1968), it should not be necessary that a written contract or promise be so specific or precise. The intention of the parties is clear and unmistakable that they were at all times referring to a right of way from Hope Street through the defendant's land to plaintiff's land. In the absence of a precise specification of the location and course of the way the doctrine announced in McConnell, supra, would fill in the omission.
None of the writings in evidence offered as notes or memoranda of the defendant's promise contains so much as a reference to the consideration for that promise. This State is included among the majority of jurisdictions which require that to satisfy the requirements of the Statute of Frauds a writing must include the consideration for the promise to convey an interest in land. See Anno: Necessity and sufficiency ofstatement of consideration in contract or memorandum of sale ofland, under statute of frauds. 23 ALR 2d 164, 172-78, § 6. Accordingly, this claim will be barred unless some exception to the Statute is shown by the evidence.
The plaintiff urges that its claim is not barred by the Statute because any insufficiency in the writings is remedied by the sworn testimony of the defendant's agent describing the consideration for its promise as well as the promise itself. They point to Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.,108 R.I. 593, 278 A.2d 405 (1971) and Adams-Riker, Inc. v.Nightingale, 119 R.I. 862, 383 A.2d 1042 (1978). In thePeacock Realty Co. case an agreement to pay a real estate broker's commission did not satisfy the requirements of the statute because it failed to state the rate of the broker's commission. Nevertheless, when the defendant's president and treasurer admitted on the witness stand that he had employed the plaintiff to procure a buyer for defendant's property, that he had agreed to pay as a commission "what he generally gets for selling farmland," and that he acknowledged that the rate of commission agreed upon was ten percent of the selling price, the Supreme Court found that permitting the defendant to invoke the statute would be tantamount to sanctioning rather than preventing an injustice. In the Adams-Riker, Inc. case the Supreme Court extended the ruling in the Peacock Realty Co. case to the situation where there is no writing whatsoever. The test appears to be that the Statute will not be applied where the testimonial admission of the defendant leaves all of the terms essential tothe validity of the agreement crystal clear and undisputed.
The defendant argues that the Peacock Realty Co. rule applies only if the party to be charged admits under oath that there was in fact an agreement or contract. It points out that Mr. Quigley admitted only that the plaintiff would in return for the easement "construct a `road' and `bring in utilities' at its cost." Proposed Findings of Fact and Conclusions of Law ofDefendant Bristol County Medical Associates, Inc., p. 29. He did, however, also admit that the proposal of the plaintiff was "an arrangement the defendant agreed to go forward with" to use his own words.
The holding in MacKnight v. Pansey, 412 A.2d 236, 243 (R.I. 1980) that the rule of Peacock Realty Co. will not apply to a party who denies that a contract was ever entered into is inapposite to this case. In the MacKnight case neither the defendant nor her agent ever testified that the defendant had consented to sell her property to the plaintiff. In this case the defendant's agent and its writings do admit that the defendant made the promise the plaintiff seeks to enforce. The sworn testimony of the defendant's agent in this case is not a mere reference to proposed terms of an agreement as in the MacKnight
case. It is an unequivocal admission that the parties had agreed upon a particular consideration for the defendant's promise.
This Court has found that all the factual elements necessary to establish a binding contract between the parties have been proved by clear and convincing credible evidence. The Court has also found that the evidence which might tend to show an absence of a meeting of the minds or a lack of mutuality of assent is either not of credible weight or not sufficiently probative to displace the clear and convincing evidence of the existence of a contract. The legal question presented is whether enough of that contract is noted or memorandized in a writing signed by an authorized agent or admitted under oath by such an agent. This Court is satisfied that permitting this defendant to assert the defense of the Statute of Frauds would lead to the same unjust result as Peacock Realty and Adams-Riker sought to prevent.
The plaintiff also argues that it should be relieved from the requirements of the Statute under the doctrine of part performance. That doctrine permits enforcement of an oral agreement where the terms of the agreement are clear and possession or improvements in reliance are substantial and clearly shown. In addition, the performance by the party seeking enforcement must render repudiation an unjust or fraudulent result. RWP Concessions. Inc. v. Rhode Island ZoologicalSociety, 487 A.2d 129, 131 (R.I. 1985). This Court has found that the terms of the agreement have been clearly established. The plaintiff has expended substantial sums in reliance on the defendant's agreement. The defendant nevertheless argues, first, that none of the sums have improved the right of way, itself, for the obvious reason that the location of the right of way has not been established, and second, that the plaintiff has not taken possession of the way, through either improvement or use. On careful consideration this Court is not satisfied that the "performance" by the plaintiff is such an improvement to the defendant's property as to render a repudiation of this agreement unjust or fraudulent if the requirements of the Statute of Frauds were permitted to render it unenforceable.
The plaintiff's "performance" of its part of the agreement was the laying-out and construction of a road with installed utilities through the defendant's land at no cost to the defendant. There is no evidence that the marketing survey was reasonably necessary to laying-out and improving the right of way. There is also no evidence that any more than $1200 of the engineering fees paid to Garofalo were attributable to the design of alternative routes for the easement through the defendant's land.
IV.
Next, the defendant contends that, even if it entered into a binding and enforceable agreement to convey an easement to the plaintiff, this Court should not grant specific performance for three reasons: First, the route of the easement has not been specified in the agreement; Second, the construction details of the road to be built by the plaintiff as consideration have not been specified; and Third, the three conditions of the defendant's promise have not been satisfied.
This Court recognizes its responsibility not to order specific performance of indefinite obligations. St. Lawrence v.Reed, 74 R.I. 353, 357, 60 A.2d 734 (1948). Nevertheless, the defendant's obligation is not indefinite. It must convey an easement across its land from Hope Street to the plaintiff's land.
 "There is a well-established body of law that where an easement of way is granted without designating the precise location thereof, the grantees of such way are entitled to a convenient, suitable, and accessible way, having regard to the interest and convenience of the owner of the land as well as the owner of the dominant tenement. Where such is the case, the owner of the servient tenement has in the first instance the right to designate the location. If he fails to do so, the owner of the dominant tenement may select a suitable location, having regard for the interest and convenience of the owner of the servient estate. (Citations omitted)." McConnell v. Golden, supra, 104 R.I., at 663, 247 A.2d, at 912.
Accordingly, since the failure of the parties to agree to a precise location for the easement will not cause the general grant of an easement to fail, such a failure of agreement should not be grounds to deny enforcement of a general promise to grant an easement. If the defendant refuses to designate a location for the right of way, the plaintiff can "select a suitable location, having regard for the interest and convenience" of the defendant.
According to the testimony of James T. Quigley on cross-examination, the defendant relied on the plaintiff to come up with the ultimate location of the right of way and the construction details of the roadway. He acknowledged that in a deposition taken in August 1990 he testified that there was no problem on the location or specifications of the right of way. The Court is satisfied that the defendant intended to rely on Anthony Nunes' experience and expertise to put in an acceptable roadway. This case is not analogous to the situation in St.Lawrence v. Reed, supra, where the respondent and the complainants were jointly obliged to install and pay for a suitable roadway. In this case the defendant is under no obligation to meet any of the costs of the roadway. As the Court itself pointed out in St. Lawrence: "This case differs greatly from a case where one of the parties alone had agreed to do a certain act or acts." 74 R.I., at 357. There will be no more problem of close supervision by the Court in this case than there is in many other equitable decrees. The plaintiff can be ordered to lay out and instal a roadway in accordance with rule ofMcConnell v. Golden, which meets all applicable regulatory requirements. The situation is not much different from the case where a purchaser is ordered to deposit purchase money in the Registry of Court and the seller is ordered to use the purchase money to discharge liens as conditions of a judgment ordering specific performance of a promise to sell land.
V.
Finally, there remain the three conditions of the defendant's promise set out in its letter of April 7, 1983 and re-affirmed in its letter of September 8, 1986. The first condition requiring prior review by the defendant of a proposed location of the road is obviously not a condition precedent to the defendant's
promise but pertains to the execution of the plaintiff's
promise to build a road. Under the McConnell rule, the plaintiff must submit its proposed lay-out to the defendant, and the defendant must join with the plaintiff in applying for regulatory approval of any road on the right of way. The judgment of specific performance will compel the plaintiff to comply with the first condition.
The second condition is in plain violation of the public policy of this State as expressed, for example, in G.L. 1956 (1991 Reenactment) § 45-53-2; G.L. 1956 (1988 Reenactment) §42-11.2-2; G.L. 1956 (1984 Reenactment) § 34-39.1-2, as amended by P.L. 1991, ch. 237, § 1, and § 34-45-2, as amended by P.L. 1988, ch. 508, § 1; and G.L. 1956 (1988 Reenactment) § 44-3-13.4, as amended by P.L. 1989, ch. 395, § 1. No Court trying to do justice in the United States should be asked to enforce such an overtly discriminatory provision.
The third condition barring the use of any building on the plaintiff's land for the practice of medicine is also no limitation on the defendant's promise but is a condition of theplaintiff's enjoyment of the easement conveyed. The plaintiff has already limited the use of the condominium units it has constructed on its land to residential purposes in the condominium declaration which applies to the phase of the Bristol Woods condominium project already in existence. This limitation, together with the design of the units themselves, sufficiently satisfies the requirement of the defendant in this regard.
VI.
This Court is aware that a demand for specific performance is addressed to its equitable discretion. Eastern Motor Inns. Inc.v. Ricci, 565 A.2d 1265 (R.I. 1989). The evidence does not support the defendant's claim that the plaintiff abandoned or waived its right to hold the defendant to its "commitment," to use its own word. Neither does it support any claim that the plaintiff has dealt unfairly or unjustly with the defendant. All the plaintiff wants in this case is to make the defendant keep its promise.
Accordingly, judgment will enter for the plaintiff for specific performance of the defendant's promise to convey an easement of right of way across its land in accordance with the following terms and conditions:
1. Within a reasonable time following entry of a final judgment in this cause the defendant will submit to the plaintiff engineering plans, prepared at the plaintiff's expense, describing the precise location of a convenient, suitable and accessible easement. In the event of the failure of the defendant to submit such plans to the plaintiff, the plaintiff shall select a suitable location, having regard for the interest and convenience of the defendant, at no expense to the defendant, and shall submit its engineering plans to the defendant for review.
2. The plaintiff shall join the defendant, at the defendant's expense, in all applications for regulatory approval of a road on such easement, to be designed and installed by the plaintiff at its sole expense.
3. Upon final construction and approval by regulatory agencies of the road as constructed the defendant shall execute a conveyance granting to the plaintiff the right of way described in paragraph 1 of the judgment.
4. It shall be a condition of such grant that no building on the plaintiff's land shall be used for the practice of medicine.
5. The Court will retain jurisdiction of this cause pending final execution of the judgment.
The plaintiff will present a form of judgment for entry on notice to the defendant.